**UNITED STATES DISTRICT COURT FOR THE**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| **WEST BAY ONE, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CA. 0:11-cv-00117-ADM -FLN** |
| | ) | |
| **ANDREA FANDRICH,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

TABLE OF CONTENTS

APPLICATION ........................................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................2

I.   INTRODUCTION ............................................................................................................2

II.  RELEVANT HISTORY ...................................................................................................3

III. ARGUMENT.....................................................................................................................3

   A. STANDARDS ON A DEFAULT JUDGMENT ...............................................................3

   B. PLAINTIFF HAS ESTABLISHED LIABILITY ...............................................................4

   C. PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES ............................................6

   D. PLAINTIFF IS ENTITLED TO RECOVER ITS COSTS AND ATTORNEYS'

      FEES .............................................................................................................................12

IV. CONCLUSION.................................................................................................................14

TABLE OF AUTHORITIES

**Cases**

Angelo Iafrate Const., LLC v. Potashnick Const., Inc.,

    370 F.3d 715, 722 (8th Cir. 2004) ............................................................................4

Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fl. 2003) ........8

Capitol Records Inc. v. Thomas-Rasset, 680 F. Supp. 2d 1045 (D. Minn. 2010) reconsideration

    denied, CIV. 06-1497 MJD LIB, 2010 WL 4286325 (D. Minn. Oct. 22, 2010)....................11, 12

DIRECTV, Inc. v. Kaas, 294 F. Supp. 2d 1044, 1048 (N.D. Iowa 2003) ......................................4

F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977)................................................3

Fallaci v. The New Gazette Literary Corp., 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983).................9

Fogerty v. Fantasy, Inc., 510 U.S. 517, 526-27, 529, 114 S.Ct. 1023, 1023 (1994) ...................12, 13

Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 400-402 (S.D.N.Y. 2002) ..........................7

Harrison Music Corp. v. Tesfaye, 293 F.Supp.2d 80, 83 (D.D.C. 2003) .......................................7, 13

Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F.Supp.2d 567, 584 (E.D. Pa. 2002)..........7

Microsoft Corp. v. McGee, 490 F.Supp.2d 874, 882 (S.D. Oh. 2007)............................................7

Microsoft Corp. v. Tierra Computer, Inc., 184 F.Supp.2d 1329, 1332 (N.D. Ga. 2001) ...............7

Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 2-3 (1st Cir. 1983) ................7

Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.,

    658 F.Supp. 458, 464 (E.D. Pa. 1987) .......................................................................6

Ortiz-Gonzalez, 277 F.3d at 63-64 .................................................................................7

Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990)..............................11

Provident Sec. Life Ins. Co. v. Gorsuch, 323 F.2d 839 (9th Cir. 1963) .........................................3

Taylor v. City of Ballwin, Mo., 859 F.2d 1330 (8th Cir. 1988) .....................................................4

West Bay One, Inc. v. Eddings, Pabrezis and Does 1-726,

    CA. 1:10-cv-00481-RMC (D.D.C.) .................................................................................5

Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113-14 (2d Cir. 2001) .......................................7

**Statutes**

17 U.S.C. § 501(a) ............................................................................................................4

17 U.S.C. § 504 ................................................................................................................6

17 U.S.C. § 504(c) ...........................................................................................................6

17 U.S.C. § 504(c)(2)........................................................................................................6

17 U.S.C. § 505 ..............................................................................................................12

17 U.S.C. § 506(1), (3) .....................................................................................................4

Fed. R. Civ. P. 55(a) ........................................................................................................3

Fed. R. Civ. P. 55(b) ........................................................................................................3

**APPLICATION FOR DEFAULT JUDGMENT**

Pursuant to the Federal Rules of Civil Procedure, Rule 55, Plaintiff hereby requests that the Court enter a judgment by default on Defendant Andrea Fandrich.  Plaintiff's application shall be based on the included memorandum of points and authorities, the declaration filed concurrently herewith, and all filings and proceedings in this case.  Plaintiff believes that a hearing on its application is not necessary.

Dated this 28th day of September, 2011.

RAJKOWSKI HANSMEIER LTD.


By_____
    Troy A. Poetz - 0318267
    Matthew W. Moehrle - 034767X
    Attorneys for Plaintiff
    11 North Seventh Avenue
    P.O. Box 1433
    St. Cloud, MN 56302
    Telephone:  (320) 251-1055

1

## MEMORANDUM OF POINTS AND AUTHORITIES

I.      INTRODUCTION

Plaintiff West Bay One, Inc. (hereafter "Plaintiff"), the owner of the copyright of the motion picture "The Steam Experiment" also known as "The Chaos Experiment," filed this case for copyright infringement against Defendant Andrea Fandrich for illegally downloading and distributing the movie over the Internet.  Defendant's identity was discovered through a related lawsuit filed in the United States District Court for the District of Columbia entitled West Bay One, Inc. v. Fandrich, Pabrezis and Does 1-726, File No. 1:10-cv-00481-RMC.  When the suit against Fandrich et al. was filed, Plaintiff did not know the names of the alleged infringers but had identified the Internet Protocol ("IP") addresses of the computers associated with the infringements.  In order to discover the actual names of the Doe Defendants, Plaintiff subpoenaed the Internet Service Providers ("ISPs") who provide service to the identified IP addresses and subsequently received identifying information from the ISPs for certain of the Doe Defendants.

One of the Doe Defendants identified was Defendant Andrea Fandrich.  Even though Defendant Fandrich received a letter from Plaintiff's counsel, and was served with a Summons and Complaint in this jurisdiction, Defendant Fandrich has failed to respond to the serious allegations of copyright infringement.  Therefore, because Plaintiff has shown sufficient facts to establish Defendant Fandrich's liability, the Court should enter a default judgment against her. Further, based on the willful infringement of Plaintiff's copyrights, the Court should enter judgment for at least $30,000 in damages, and attorneys' fees and costs of $2,888.17.

## II.    RELEVANT HISTORY

On July 30, 2010, the United States District Court for the District of Columbia granted Plaintiff's motion for approval to conduct discovery under the First Amended Complaint in that matter.  [CA. 1:10-cv-00481-RMC, Doc. No. 32][1]  Pursuant to those orders, Plaintiff served the various ISPs with subpoenas to identify the Doe Defendants.

Plaintiff's counsel has conducted some investigation of Defendant Fandrich and has determined that Defendant Fandrich is not an infant or incompetent person and that Defendant Fandrich is not in military services such that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply.  (Declaration of Mathew W. Moehrle filed concurrently herewith) ("Moehrle Decl.").

## III.    ARGUMENT

### A.  STANDARDS ON A DEFAULT JUDGMENT

Federal Rule of Civil Procedure 55(a) provides that the clerk of the court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  After a default has been entered by the clerk of the court, a court may enter a default judgment pursuant to Rule 55(b).  Fed. R. Civ. P. 55(b).

"The Federal Rules of Civil Procedure commit the entry of a default judgment against a party to the sound discretion of the trial court."  F.T.C. v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977) (citing Provident Sec. Life Ins. Co. v. Gorsuch, 323 F.2d 839 (9th Cir. 1963)).  Upon entry of default by the clerk of the court, the defaulting defendant is deemed to have

---

[1]  Plaintiff's First Amended Doc. No. 1 was filed on July 27, 2010 and named Does 1-1,653 as Defendants. [Doc. No. 30].

"admitted all of the well pleaded allegations in the plaintiff's complaint."  Angelo Iafrate Const.,

LLC v. Potashnick Const., Inc., 370 F.3d 715, 722 (8th Cir. 2004) (citing Taylor v. City of

Ballwin, Mo., 859 F.2d 1330 (8th Cir. 1988)).

Although the default establishes a defendant's liability, the court is required to determine

the sum to be awarded when damages are not sum certain.  DIRECTV, Inc. v. Kaas, 294 F.

Supp. 2d 1044, 1048 (N.D. Iowa 2003).  Accordingly, when moving for a default judgment, the

plaintiff must prove its entitlement to the amount of monetary damages requested.  Id.

B.  PLAINTIFF HAS ESTABLISHED LIABILITY

The Copyright Act provides that the owner of a copyright has the exclusive rights to

reproduce and to distribute copies of the copyrighted work.  17 U.S.C. § 506(1), (3).  The

Copyright Act further provides that anyone who violates any of the exclusive rights of the

copyright owner is an infringer of the copyright. 17 U.S.C. § 501(a).

Here, the Complaint alleges that (1) the Plaintiff owns the applicable exclusive rights to

the copyrighted motion picture titled "The Steam Experiment," also known as "The Chaos

Experiment" (the "Copyrighted Motion Picture") [Doc. No. 1, ¶ 8]; (2) the Copyrighted Motion

Picture is the subject of a valid Certificate of Copyright Registrations issued by the Register of

Copyrights [Doc. No. 1, ¶ 8]; (3) Defendant Fandrich infringed the exclusive rights of Plaintiff

by reproducing and distributing to others the Copyrighted Motion Picture, without the

permission or consent of the Plaintiff, by means of an online media distribution system [Doc. No.

1, ¶ 10]; and (4) Defendant Fandrich's infringement was willful (as defined in the Copyright Act)

because Defendant Fandrich either was aware or had reason to be aware that these actions

constituted an infringement of Plaintiff's rights [Doc. No. 1, ¶ 11].

4

Fandrich's liability is established based partly on findings in <u>West Bay One, Inc. v. Eddings, Pabrezis and Does 1-726</u>, CA. 1:10-cv-00481-RMC (D.D.C.).  In <u>West Bay One</u>, the U.S. District Court for the District of Columbia granted Plaintiff's Motion for Leave to Take Discovery determining that Plaintiff has met its threshold burden to obtain further information about the Doe Defendants by identifying the Doe Defendants with sufficient specificity and showing that Plaintiff's suit can withstand a motion to dismiss.  Therein, Plaintiff has made a prima facie evidentiary showing that the IP addresses it has identified and subpoenaed to various ISPs did make an unlawful download of Plaintiff's copyrighted Motion Picture on a specific date and time.

The infringing IP addresses were obtained by Guardaley's proprietary tracing software program as detailed in the declarations of Benjamin Perino and Patrick Achache.  (Perino Declaration (filed as Exhibit A to Plaintiff's Motion for Leave to Take Discovery in <u>West Bay One</u> [Moehrle Decl., Ex. 14]); Achache Declaration (filed as Exhibit B to Plaintiff's Motion for Leave to Take Discovery in <u>West Bay One</u> [Moehrle Decl., Ex. 15])).  More specifically, Plaintiff utilized proprietary technology developed and instituted by Guardaley that detects the unauthorized distribution of movies and other audiovisual content and files over online media distribution systems.  [<u>see</u> Moehrle Decl., Ex. 15] (Achache Declaration) ¶ 4; <u>see generally</u> Moehrle Decl., Ex. 14 (Perino Declaration)]  Accordingly, Defendant Fandrich's IP address at the time of the alleged infringement was identified in the <u>West Bay One</u> case in the District of Columbia because she was offering files corresponding to Plaintiff's Copyrighted Motion Picture for unlawful transfer or distribution.  [<u>see</u> Moehrle Decl., Ex. 15 (Achache Declaration) at ¶ 8] In fact, Guardaley actually downloaded Plaintiff's Copyrighted Motion Picture from the IP address assigned to Fandrich.  <u>See Id</u>. at ¶ 9.  Lastly, Guardaley confirmed that the file that

Fandrich distributed was actually Plaintiff's Copyrighted Motion Picture by watching both and comparing them.  Id. at ¶¶ 16-17.

Specific to Fandrich, Guardaley determined that Defendant Fandrich, without the permission or consent of the Plaintiff, used an online media distribution system to reproduce and distribute to the public the Copyrighted Motion Picture on February 23, 2010 at 14:29:01 GMT via the IP address 71.38.50.26 [Doc. No. 1., ¶ 10].  In response to the subpoena served on it, Quest identified Defendant Fandrich as the owner of that IP address on that date and time.  Moehrle Decl., ¶ 4, Ex. 1.  Therefore, Plaintiff has made a prima facie showing that Defendant Fandrich infringed Plaintiff's copyrights.

## C.  PLAINTIFF IS ENTITLED TO STATUTORY DAMAGES

Pursuant to the Copyright Act, a plaintiff may elect to recover statutory damages instead of actual damages or the infringer's profits.[2]  17 U.S.C. § 504(c) provides: "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work ... in a sum of not less than $750 or more than $30,000 as the court considers just."

Section 504(c) further provides that where an infringement is committed willfully, a court has discretion to increase the award of statutory damages to $150,000.  17 U.S.C. § 504(c)(2).  While "willful" is not defined in the Copyright Act, willful infringement has been described as when the infringer acted with "actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyright."  Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc., 658 F.Supp. 458, 464 (E.D. Pa. 1987).

---

[2]  Plaintiff prayed for "actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Plaintiff."  [Doc. No. 1, Prayer for Relief ¶ 2]

Statutory damages under the Copyright Act can provide compensation and restitution to copyright owners, but such awards primarily serve to deter wrongful conduct.  See Harrison Music Corp. v. Tesfaye, 293 F.Supp.2d 80, 83 (D.D.C. 2003) ("Statutory damages are not designed to be merely compensatory or restitutionary, but are also meant to discourage wrongful conduct.") (citing Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113-14 (2d Cir. 2001)).  In determining statutory damage awards, courts look to factors such as (1) expenses saved and profits reaped by the infringing party, (2) revenues lost by the copyright holder, and (3) whether the infringing party acted willfully.  See Harrison Music Corp. v. Tesfaye, 293 F.Supp.2d 80, 83-84 (D.D.C. 2003); Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F.Supp.2d 567, 584 (E.D. Pa. 2002) (citing cases); see also Microsoft Corp. v. McGee, 490 F.Supp.2d 874, 882 (S.D. Oh. 2007) ("[S]tatutory damages are appropriate in default judgment cases because the information needed to prove actual damages is within the infringers' control and is not disclosed.") (citing cases).

Accordingly, courts routinely grant statutory damage awards in amounts greater than the statutory minimum as part of default judgments in copyright infringement cases.  See Ortiz-Gonzalez, 277 F.3d at 63-64 (award of greater than minimum statutory damages as part of default judgment); Getaped.com, Inc. v. Cangemi, 188 F. Supp. 2d 398, 400-402 (S.D.N.Y. 2002) (on default judgment, awarding $30,000 statutory damages for single infringement); Morley Music Co. v. Dick Stacey's Plaza Motel, Inc., 725 F.2d 1, 2-3 (1st Cir. 1983) (award of greater than minimum statutory damages as part of default judgment); Microsoft Corp. v. Tierra Computer, Inc., 184 F.Supp.2d 1329, 1332 (N.D. Ga. 2001) (awarding $450,000 in statutory damages under the Copyright Act, or $30,000 per infringed work, for non-willful infringements of 15 copyrights).

Here, not only is Plaintiff entitled to statutory damages against Defendant Fandrich, Plaintiff is entitled to the maximum statutory damages because of Defendant Fandrich' willful infringement.  As Plaintiff has established that Defendant Fandrich reproduced and distributed at least one of Plaintiff's copyrighted motion pictures, with willful disregard for and indifference to Plaintiff's rights, Plaintiff could request statutory damages of up to $150,000.  More specifically, Plaintiff has shown that, because of the nature of the swarm downloads in the BitTorrent protocol used by Defendant Fandrich, Defendant Fandrich necessarily reproduced (downloaded) *and* distributed (uploaded) the Copyrighted Motion Picture, resulting in multiple infringements. [See Doc. No. 1; see generally Moehrle Decl., Ex. 15-16 (Achache and Perino declarations)] Again, because of the viral nature of the torrent platform, Defendant Fandrich contributed to the distribution of Plaintiff's Copyrighted Motion Picture to possibly millions of people worldwide. [See Moehrle Decl., Ex. 16 (Perino declaration), ¶ 6]

In fact, the very nature of the torrent platform evidences Defendant Fandrich's intent to infringe copyrights.  First, and most obvious, getting a film for free when a person would otherwise have to pay for it evidences an intent to bypass legitimate means to obtain that film. Accordingly, such conduct shows knowledge of copyright infringement.  See Arista Records, Inc. v. Beker Enterprises, Inc., 298 F. Supp. 2d 1310, 1313 (S.D. Fl. 2003) (stating that the sales price is good evidence that a defendant knew he was infringing copyrights when that sales price is well below the average retail price).

Second, it is clear that downloading the particular torrent software is a willful act, in and of itself, particularly as that software's sole purpose is to share unlicensed content.  In the case of the torrent software, a substantial amount of technical configuration is required.  See Moehrle Decl., Ex. 2.  The level of technical proficiency and involvement required to install torrent

software, which includes configuring specific ports and specifically and intentionally allowing

sharing of copyright protected material, is demonstrative of a flagrant and intentional act of

infringement.

Third, it has been shown that the use of the torrent platform is primarily for the

infringement of copyrights.  As stated in a January 2010 study by a Princeton Senior Sauhard

Sahi (under the supervision of Princeton Professor Ed Felton), about 99% of all files on

BitTorrent were infringing copyrights (10 of the 1021 files were found to be likely non-

infringing), with 100% of movie and television files found to be infringed content.  (See Moehrle

Decl., Ex. 3; see also Moehrle Decl., Ex. 4 (study from the University of Ballarat in Australia

finding that only 0.3% of files on BitTorrent were confirmed to be legal)).  Therefore, it is

undeniable that the acts of Defendant Fandrich installing and using the torrent software, known

to be used for unlawfully sharing copyrighted works, evidences Defendant Fandrich's willful

infringement.

Additionally, Defendant Fandrich failed to even respond to the allegations, despite being

served with process in this matter and notified of her potential default in accordance with this

Court's Order of May 25, 2011.  See Moehrle Decl., ¶¶ 2, 16.  Such conduct evidences a willful

disregard for and indifference to Plaintiff's rights.  See Fallaci v. The New Gazette Literary

Corp., 568 F.Supp. 1172, 1173 (S.D.N.Y. 1983) (stating that a court may infer a defendant

willfully infringed when that defendant defaults and consciously chooses not to defend the

action).

Lastly, Plaintiff is entitled to the maximum statutory damages because of the actual harm

caused by Defendant Fandrich's willful infringement.  Plaintiff's motion picture has significant

value and has been produced and created at considerable expense, with a budget of $7 million.

[See Doc. No. 1, ¶ 7][3]  It is undeniable that piracy has cost copyright holders, especially movie studios and related entities, billions of dollars.

As stated in a study completed by the Motion Picture Association of America, which represents the major movie studios in government affairs, U.S. major movie studios lost $6.1 billion in revenues in 2005 to illegal videos, DVDs, and Internet downloads.  See Moehrle Decl., Ex. 5.  According to a 2007 study by the Institute for Policy Innovation, piracy costs the U.S. movie, sound recording, and copyright industries $58 billion in lost output, $16 billion in employee earnings, and more than $2.6 billion in lost tax revenues. See Moehrle Decl., Exs. 6 and 7.[4]  About 75 percent of a movie's profits come from downstream revenue, such as rentals or syndication after its box office release, and those profits fund a majority of pension plans and benefits for workers in those industries.   See Moehrle Decl., Ex. 7.[5]

Here, it is undeniable that the torrent platform was intentionally used to bypass legitimate means of obtaining Plaintiff's motion picture in order to get it for free.  Add that to the fact that Defendant Fandrich's infringement likely led to many others receiving Plaintiff's motion picture for free, when they would have otherwise had to pay for it, and it is undeniable Plaintiff has been severely and negatively impacted by the infringement activities of Defendant Fandrich and others.

_____

[3]  This is in addition to the time and expense Plaintiff has invested in litigating this case for months to defend its copyrights in the face of numerous unsuccessful attacks.

[4]  A report funded by a grant from the MPAA found that the profit margin on movie piracy was more lucrative than drug trafficking, citing that it was three times higher than the markup for heroin or cocaine. See Moehrle Decl., Ex. 7.

[5]  In fact, one study has shown how BitTorrent users have been able to profit from illegally sharing copyrighted works.  See Moehrle Decl., Ex. 8.

Accordingly, Plaintiff requests $30,000 in statutory damages for Defendant Fandrich's multiple willful infringements, a reasonable sum that is not even close to the maximum amount of statutory damages for one willful infringement ($150,000). Plaintiff believes that the requested amount is a reasonable and justified calculation of Plaintiff's damages and costs incurred by Plaintiff to protect its rights. See Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (noting that in measuring damages, a court should be guided by what is just in the particular case, considering the nature of the copyright and the circumstances of the infringement).

Additionally, Plaintiff believes this request is reasonable and justified, as it represents less than what a jury would likely award. Numerous jury awards in similar cases evidence an even higher amount of damages for similar infringing activity. For example, on November 8, 2010, in the case of Capitol Records Inc., et al. v. Thomas-Rasset (D. Minn.) [Case No. 0:06-cv-01497-MJD-LIB], judgment was entered on the jury's award to the plaintiffs of $62,500 for each of the 24 songs the defendant was found to have illegally shared, equaling a total award of $1.5 million.

It is prudent to note that this Court did reduce the jury award against Thomas-Rasset on remittitur to three times the statutory minimum; an award which still required defendant to pay an aggregate penalty of $54,000. Capitol Records Inc. v. Thomas-Rasset, 680 F. Supp. 2d 1045 (D. Minn. 2010) reconsideration denied, CIV. 06-1497 MJD LIB, 2010 WL 4286325 (D. Minn. Oct. 22, 2010). While three times the statutory limit may be appropriate for music recordings, it is inappropriate for motion pictures given the need to compensate Plaintiffs, and to deter similar violations of the Copyright Act. In pleading statutory damages, it is well established that Plaintiffs are not required to prove actual damages. Id. at 1053. However, this Court has

11

recognized that actual damages do weigh in the Court's analysis.  Id. at 1054.  The actual damage from the theft and distribution of a single motion picture is much greater than a single sound recording.  While a typical song on ITunes retails for $1.29, a typical movie can retail for $10 to $20.  This is consistent with the significantly higher cost to produce a 90 to 120 minute movie than to produce a two to three minute song.  Recall that the budget for the copyrighted work at issue exceeded $7 million.  A larger statutory penalty for the theft of a motion picture compared to a sound recording is also consistent with the deterrence aspect of the Copyright Act since a greater penalty is needed to prevent a greater harm.  Furthermore, in Capitol Records, this Court justified a lower award partly because the defendant was only infringing for personal use. Id. at 1053.  In the current case it is uncertain whether Fandrich is infringing for a personal or commercial use because she has failed to defend the lawsuit.

D.  PLAINTIFF IS ENTITLED TO RECOVER ITS COSTS AND ATTORNEYS' FEES

Pursuant to the Copyright Act, a plaintiff may recover its costs and attorneys' fees.[6]  17 U.S.C. § 505 provides: "[i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof.  Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."

Awarding attorneys' fees addresses the goals of the Copyright Act, one of them being to discourage infringement, because it enables rights holders to vindicate or defend their rights.  See Fogerty v. Fantasy, Inc., 510 U.S. 517, 526-27, 529, 114 S.Ct. 1023, 1023 (1994).

---

[6]  Plaintiff prayed for "Plaintiff's costs [and] … Plaintiff's reasonable attorneys' fees."  [Doc. No. 1, Prayer for Relief ¶¶ 3-4]

When awarding attorneys' fees under the Copyright Act, the Court must initially decide whether awarding attorneys' fees are appropriate, considering such things as the motivation, objective reasonableness, and the need in particular circumstances to advance considerations of compensation and deterrence. Fogerty, 510 U.S. at 535, 114 S.Ct. 1023. Next, the Court must determine whether the amount of the attorneys' fees sought is reasonable, generally considering the time reasonably expended on the litigation multiplied by a reasonable hourly rate but also considering such factors as the experience, reputation, and ability of the attorneys, the results obtained, and awards in similar cases. See Harrison Music Corp. v. Tesfaye, 293 F.Supp.2d at 85.[7]

Here, Defendant Fandrich's infringing actions were willful, and Defendant Fandrich has shown a blatant disregard for Plaintiff's rights by, inter alia, failing to respond to multiple notices of infringement. Additionally, Plaintiff has expended a considerable amount of time and money to create its copyrighted motion picture, and now seeking to protect it, but Plaintiff has been severely and negatively impacted by the infringement activities of Defendant Fandrich and others using the torrent platform to reproduce and distribute Plaintiff's work free of charge. Therefore, awarding Plaintiff attorneys' fees and costs are appropriate under the Copyright Act.

As a result of the Plaintiff's prosecution of this case against Defendant Fandrich, Plaintiff has incurred costs (including attorneys' fees) for which it requests their inclusion in the default judgment. Specifically, Plaintiff requests $2,496.00 in attorneys' fees and $392.17 in out-of-

---

[7] Further, the Copyright Act permits the Court to award the prevailing party "full costs" at its discretion.

pocket costs.  See Moehrle Decl., ¶ 16.  All fees and costs sought to be entered in the judgment against Defendant Fandrich relate specifically to this Defendant and no other Defendant.  Id.[8]

IV.	CONCLUSION

	For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant Fandrich for damages in the amount of $30,000 and costs and attorneys' fees in the amount of $2,888.17.  As Plaintiff has demonstrated the willful infringement of its copyrights, such a judgment will properly compensate Plaintiff and appropriately enforce Plaintiff's rights.

	Dated this 28th day of September, 2011.

						RAJKOWSKI HANSMEIER LTD.


					By    Matthew W. Moehrle
						Troy A. Poetz - 0318267
						Matthew W. Moehrle - 034767X
						Attorneys for Plaintiff
						11 North Seventh Avenue
						P.O. Box 1433
						St. Cloud, MN 56302
						Telephone:  (320) 251-1055

---

[8]  Plaintiff is willing to forego Defendant Fandrich' pro-rated share of all costs, including attorneys' fees and investigation costs, incurred up to the date of the default judgment, and Plaintiff reserves the right to seek these costs against other Defendants.